IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JANE DOE, Plaintiff, vs. ALEX W. KLOPP, Defendant. | ) | Case No. 8:26–CV–483 **COMPLAINT** |

COMES NOW the Plaintiff, Jane Doe, by and through her counsel of record, and for her causes of action against the Defendant, Alex W. Klopp, states as follows:

## JURISDICTION, VENUE, AND PARTIES

1. This Court has jurisdiction pursuant to the provisions of 28 U.S.C. § 1331 with respect to Count I of the Complaint.

2. This Court has supplemental jurisdiction pursuant to the provisions of 28 U.S.C. § 1367 with respect to Counts II and III of the Complaint.

3. Venue for this action is proper in the United States District Court for the District of Nebraska because the acts and omissions complained of herein occurred in the District of Nebraska.

4. Plaintiff Jane Doe ("Doe") is, and was at all times relevant to this action, a resident of the District of Nebraska.

5. Plaintiff has filed this Complaint under a pseudonym, as permitted both by 15 U.S.C. § 6851(b)(3)(B) and Neb. Rev. Stat. § 25–3509. *See also Cajune v. Indep. Sch. Dist. 194*, 105 F.4th 1070, 1077 (8th Cir. 2024).

6. Plaintiff will be filing a motion requesting leave to proceed under a pseudonym forthwith upon the docketing of this case.

7. Defendant Alex W. Klopp ("Klopp") is, and was at all times relevant to this action, a resident of the District of Nebraska.

## FACTUAL BACKGROUND

### A. Overview

8. This paragraph of the Complaint provides a non-exhaustive summary of the facts giving rise to Doe's claims that are set forth below. In short, Doe has brought this action because Klopp—without legal authorization or the knowledge and consent of Doe—obtained and subsequently caused intimate visual depictions of Doe to be disclosed. These intimate visual depictions were non-commercial in nature, and were both obtained and subsequently disclosed during a time period when Klopp and Doe were married to each other and living together. These intimate visual depictions included, but are not necessarily limited to, media depicting Doe engaging in sexual acts with Klopp including instances of both oral and vaginal penetration as well as other media that showed Doe's breasts, vaginal area, and buttocks. This media included depictions where Doe was recognizable because her face could be seen. The media likewise included, but is not necessarily limited to, images of Doe in the shower and images of Doe's recently-worn undergarments. Doe was unaware that any of the above-described media was being taken at the time such media was created because Klopp was surreptitiously recording Doe. Klopp was able to record Doe without her knowledge or consent by, among other things, using phone applications that are designed to record videos while showing a blank or dark screen. Without the knowledge or consent of Doe, Klopp would then upload these intimate visual depictions to various applications including, but not limited to, the "KeepSafe" app. Klopp's ruse was only uncovered because on or about December 11, 2024, Doe discovered intimate visual depictions of herself on their shared child's tablet. Eventually, Klopp admitted to Doe that he had been secretly recording their intimate moments and sexual activities for several years—both when they were living in Texas and when they were living in Nebraska. Klopp was later criminally charged in connection with this matter by the State of Nebraska and, on or about May 7, 2026, Klopp pleaded guilty to an attempted violation of Neb. Rev. Stat. § 28–311.08 (a Class I Misdemeanor). Doe has brought this action in an effort to seek redress for the damages she has incurred and will continue to incur due to Klopp's actions. Specifically, Doe brings forth three separate causes of action for damages: (1) a federal statutory claim pursuant to 15 U.S.C. § 6851; (2) a Nebraska state law statutory claim pursuant to the Uniform Civil Remedies for Unauthorized Disclosure of Intimate Images Act, Neb. Rev. Stat. § 25–3501; and (3) a Nebraska state common law tort claim for intentional infliction of emotional distress. Further details regarding the facts of this case and Doe's three claims are alleged with additional specificity below. Doe also seeks equitable relief, as specified below, in accordance with 15 U.S.C. § 6851(b)(3)(A)(ii), Neb. Rev Stat. § 25–3505(b)(2), and this Court's inherent equitable powers.

## B. The Relationship of the Parties

9. Doe and Klopp were married to each other from between on or about August 11, 2017, to on or about February 2, 2026. The two share one minor child together.

10. As a married couple, Doe and Klopp engaged in sexual relations with one another. However, at no point during the course of their marriage did Doe ever consent to being video-recorded during the course of their sexual relations without her knowledge.

11. Doe also never consented to having Klopp take videos or images of her in states of undress, to include in the shower, without her knowledge.

12. Notwithstanding the lack of consent—affirmative, implied, or otherwise—Klopp began secretly recording Doe and these recordings included, among other things, instances where Klopp and Doe were sexually intimate with one another and instances where Doe was nude in the shower.

13. Klopp initially started his practice of secretly recording Doe while the two lived together in Texas.

14. However, Klopp continued this practice of secretly recording Doe when they moved to Nebraska in or about March of 2023.

15. Collectively, these intimate visual depictions included media that showed, among other things, the following: (1) the uncovered genitals, pubic area, anus, and post-pubescent female nipple of Doe, and (2) Doe engaging in sexually explicit conduct, as that term is defined by 15 U.S.C. § 6851(a)(6).

16. These intimate visual depictions did not constitute "commercial pornographic content" as that term is defined by 15 U.S.C. § 6851(a)(1).

17. These intimate visual depictions were not produced while Doe was in a public place within the meaning of 15 U.S.C. § 6851(a)(5).

18. Doe never gave Klopp any form of consent—affirmative, implied, or otherwise—to create or disclose these intimate visual depictions.

19. Given the nature of their relationship, Doe reasonably expected that Klopp would not create, show, disclose, distribute, publish, transfer, make accessible and/or otherwise disseminate intimate visual depictions of her without her knowledge and consent.

20. Under the circumstances and the nature of the relationship between Klopp and Doe at the time these intimate visual depictions were created and subsequently disclosed, any reasonable person in Klopp's position would have understood that Doe had not consented to the creation or disclosure of these intimate visual depictions of Doe.

21. Klopp did, in fact, know that Doe neither knew about nor consented to the creation or disclosure of these intimate visual depictions of Doe at the time they were created or disclosed.

22. Alternatively, and at the very least, Klopp recklessly disregarded whether Doe consented to the creation and disclosure of these intimate visual depictions.

### C. Doe Discovers That Klopp Has Been Secretly Recording Her

23. On or about December 11, 2024, while at their family home in the District of Nebraska, Doe attempted to download a "Paw Patrol" application on her then-three-year-old child's tablet.

24. While in the process of downloading the "Paw Patrol" application, Doe noticed a different application and upon gaining access to it observed that it included media of her performing sexual acts with Klopp. In at least some of this media, Doe was identifiable because it showed her face and likeness.

25. Doe had neither consented to the creation or disclosure of any such media and was both shocked and disgusted when she discovered it on her child's tablet.

26. Given the nature of their relationship and their marital status, Doe reasonably expected that their marital sexual relations were not being secretly recorded by her husband without her knowledge and consent.

27. When Doe later confronted Klopp about what she had found on their child's tablet, Klopp ultimately admitted to her that he had been taking videos of their sexual activities for years. He started this practice when they lived in Texas, but continued it when they moved to Nebraska as well.

28. Klopp also showed Doe various applications he used to store these intimate visual depictions of Doe, and when he did Doe observed that there was also media depicting her in the shower as well as pictures of her used underwear. Doe had not consented to the creation or disclosure of such media either.

29. In addition to what he admitted to Doe, Klopp also made admissions to various other individuals, including Doe's mother.

### D. Klopp is Convicted in Nebraska State Court

30. On or about March 5, 2026, the State of Nebraska filed an Information in Douglas County District Court alleging that Klopp knowingly and intentionally recorded images or videos of Doe without her consent when Doe's intimate area would not be generally visible to the public, in violation of Neb. Rev. Stat. § 28–311.08(2) (a Class IV Felony).

31. Klopp subsequently entered into a plea agreement with the State of Nebraska wherein he agreed to plead to a reduced charge of "Attempting" to violate Neb. Rev. Stat. § 28–311.08 (a Class I Misdemeanor).

32. On May 7, 2026, Klopp pleaded guilty (not no contest) in Douglas County District Court to an Amended Information alleging the following:

> On or about 14 March 2023 through 11 December 2024, in Douglas County, Nebraska, ALEX KLOPP did there and then knowingly and intentionally attempt to photograph, film, or otherwise record an image or video of the intimate area of [JANE DOE] without his or her knowledge or consent when his or her imtimate [sic] area would not generally be visible to the public regardless of whether [JANE DOE] was located in a public or private place, in violation of Neb. Rev. Stat. § 28–311.08 and 28–201(4)(e), a Class I Misdemeanor.

33. Klopp's plea of guilty was accepted by the Honorable Todd O. Engleman, and Klopp was adjudged guilty by the Douglas County District Court that same day.

34. Klopp was subsequently sentenced on July 16, 2026, in Douglas County District Court. During the allocution portion of the sentencing hearing, Klopp stated that he was truly sorry for what he had done to Doe, that what he had done was wrong, and that he had no excuse for his actions, or words to that effect. However, he also acknowledged that his apology could not erase the pain he had caused Doe.

35. Prior to imposing sentence, the District Court Judge expressed that he was not sure Klopp fully appreciated what he had done in terms of the severity of his conduct, or words to that effect, and described Klopp's actions as extremely concerning.

### E. The Damage to Doe and the Harm She Will Continue to Suffer

36. As a result of his above-described actions, Klopp has caused Doe to suffer damages as set forth more fully below. Doe will also continue to suffer such damages in the future. Klopp knew that Doe did not consent to the creation, transfer, disclosure, or dissemination of the intimate visual depictions and nevertheless intentionally engaged in the conduct alleged herein. Klopp further knew that disclosure of sexually explicit and intimate depictions of Doe without her consent would cause willful and malicious injury to Doe, or acted with substantial certainty that such conduct would cause such injury.

## CAUSES OF ACTION

### COUNT I:
### Nonconsensual Disclosure of Intimate Visual Depictions
### (Federal Statutory Cause of Action: 15 U.S.C. § 6851, *et seq.*)

37. Plaintiff incorporates the foregoing paragraphs, as if fully set forth herein.

38. In accordance with 15 U.S.C. § 6851, a qualifying "individual whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without the consent of the individual, where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such a disclosure, may bring a civil action against that person in an appropriate district court of the United States[.]" 15 U.S.C. § 6851(b)(1)(A).

39. A different subsection of this same statute provides that in such a civil action, among other remedies, "an individual may recover the actual damages sustained by the individual or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred[.]" 15 U.S.C. § 6851(b)(3)(i).

40. For purposes of 15 U.S.C. § 6851, the term "disclose" means "to transfer, publish, distribute, *or* make accessible." 15 U.S.C. § 6851(a)(4) (emphasis added).

41. The United States Supreme Court has explained that when the text of a statute uses the conjunction "or," "its ordinary use is almost always disjunctive, that is, the words it connects are to 'be given separate meanings.'" *United States v. Woods*, 571 U.S. 31, 45 (2013) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)). In a related vein, the canon

against surplusage reinforces "the cardinal principle of statutory construction that courts must give effect, if possible, to every clause and word of a statute." *Williams v. Taylor*, 529 U.S. 362, 367, 120 S. Ct. 1495, 1499 (2000).

42. Between on or about March 14, 2023 and on or about December 11, 2024, while in the District of Nebraska, Klopp caused intimate visual depictions of Doe to be taken and subsequently disclosed in or affecting interstate or foreign commerce or using any means or facility of interstate commerce, without the knowledge or consent of Doe, and this disclosure caused harm to Doe.

43. While not necessarily the only means by which Klopp "disclosed" Doe's intimate visual depictions, Klopp specifically caused such intimate visual depictions to be disclosed by uploading, transferring, and/or storing them on electronic applications ("apps"), including—but not necessarily limited to—the "KeepSafe" app.

44. Additionally, Klopp caused Doe's intimate visual depictions to be "disclosed" by causing them to be transferred, stored, and accessible on multiple devices including, but not limited to, his child's tablet.

45. These intimate visual depictions that were disclosed consisted of electronic media that showed, among other things: (1) Doe's uncovered genitals, pubic area, anus, and/or post-pubescent female nipple, and (2) Doe engaging in "sexually explicit conduct," as that term is defined by 15 U.S.C. § 6851(a)(6).

46. At the time Klopp intentionally caused said disclosure of Doe's intimate visual depictions, he did so knowing that Doe had not consented to such disclosure.

47. In the alternative, and at the very least, at the time Klopp intentionally caused said intimate visual depictions of Doe to be disclosed, he recklessly disregarded whether Doe had not consented to such disclosure.

48. At the time Klopp intentionally caused said disclosure, Doe's intimate visual depictions were not a matter of public concern or public interest.

49. At the time Klopp intentionally caused said disclosure, he was not acting in good-faith or with any legally authorized basis for doing so.

50. Klopp's action in this regard caused willful and malicious injury to Doe, within the meaning of 11 U.S.C. § 523(a)(6).

51. The intimate visual depictions of Doe that Klopp intentionally caused to be disclosed depicted Doe's body in whole or in part, such that she was identifiable by virtue of her face, likeness, and/or other distinguishing characteristics, as well as from other information displayed in connection with the visual depictions.

52. Wherefore, Doe respectfully requests that this Honorable Court award her relief in accordance with 15 U.S.C. § 6851(b)(3) to include Doe's actual damages (including damages for physical harm, economic harm, and emotional distress) or liquidated damages in the amount of $150,000.00 (whichever is greater), punitive damages to the extent authorized by law, the costs of this action, reasonable attorney's fees, and other litigation costs reasonably incurred. Doe further requests that this Honorable Court fashion appropriate equitable relief to include, among other things, issuing a permanent injunction ordering Klopp to cease display or disclosure of Doe's intimate visual depictions, to destroy and delete all copies of Doe's intimate visual depictions that are in his possession, and to affirmatively notify Doe of any and all other individuals or entities—to include applications, websites, or social media platforms—that may have received or be in possession of copies of Doe's intimate visual depictions so that Doe may seek their destruction and deletion from these individuals and/or entities.

**COUNT II:**
**Uniform Civil Remedies for Unauthorized Disclosure of Intimate Images**
**(Nebraska Statutory Cause of Action: Neb. Rev. Stat. § 25–3501, *et seq.*)**

53. Plaintiff incorporates the foregoing paragraphs, as if fully set forth herein.

54. In accordance with Neb. Rev. Stat. § 25–3503, except as otherwise provided, "a depicted individual who is identifiable and who suffers harm from a person's intentional disclosure or threatened disclosure of an intimate image that was private without the depicted individual's consent has a cause of action against the person if the person knew or acted with reckless disregard for whether: (1) the depicted individual did not consent to the disclosure; (2) the intimate image was private; and (3) the depicted individual was identifiable." Neb. Rev. Stat. § 25–3503(b).

55. Under this statutory scheme, a prevailing plaintiff may recover as compensation economic and noneconomic damages proximately caused by the defendant's disclosure or threatened disclosure, including damages for emotional distress whether or not accompanied by other damages; or presumed damages not to exceed ten thousand dollars against each defendant in an amount that bears a reasonable relationship to the probable damages incurred by the prevailing plaintiff; and an amount equal to any

monetary gain by the defendant from disclosure of the intimate image. *See* Neb. Rev. Stat. § 25–3505(a). Additionally, in an action under this act, the court may award a prevailing plaintiff both reasonable attorney's fees and costs as well as additional relief including injunctive relief. *See* Neb. Rev. Stat. § 25–3505(b).

56. Between on or about March 14, 2023 and on or about December 11, 2024, while in the District of Nebraska, Klopp caused intimate visual depictions of Doe to be taken and subsequently disclosed in or affecting interstate or foreign commerce or using any means or facility of interstate commerce, without the knowledge or consent of Doe, and this disclosure caused harm to Doe.

57. These intimate visual depictions consisted of electronic media that showed, among other things: (1) Doe's uncovered genitals, pubic area, anus, and/or post-pubescent female nipple, and (2) Doe engaging in "sexual conduct," as that term is understood within the meaning of Neb. Rev. Stat. § 25-3502.

58. These intimate visual depictions that Klopp intentionally caused to be disclosed were private and were both created and disclosed without Doe's consent.

59. At the time Klopp intentionally created and caused said disclosure of Doe's intimate visual depictions, he did so knowing that Doe had not consented to such creation or disclosure.

60. In the alternative, and at the very least, at the time Klopp intentionally caused said intimate visual depictions of Doe to be created and disclosed, he recklessly disregarded whether Doe had not consented to such creation or disclosure.

61. At the time Klopp intentionally caused said creation and disclosure, Doe's intimate visual depictions were not a matter of public concern or public interest.

62. At the time Klopp intentionally caused said creation and disclosure, he was not acting in good-faith or with any legally authorized basis for doing so.

63. Klopp's action in this regard caused willful and malicious injury to Doe within the meaning of 11 U.S.C. § 523(a)(6).

64. The intimate visual depictions of Doe that Klopp intentionally created and disclosed depicted Doe's body, in whole or in part, such that she was identifiable by virtue of her face, likeness, and/or other distinguishing

characteristics as well as from other information displayed in connection with the visual depictions.

65. Wherefore, Doe respectfully requests that this Honorable Court award her relief in accordance with Neb. Rev. Stat. § 25–3505 to include Doe's actual damages (including damages for physical harm, economic harm, and emotional distress) or presumed damages in the amount of $10,000.00 (whichever is greater), the amount equal to any monetary gain made by Klopp from the disclosure of Doe's intimate visual depictions (if any), the costs of this action, reasonable attorney's fees, and other litigation costs reasonably incurred. Doe further requests that this Honorable Court fashion appropriate equitable relief to include, *inter alia*, issuing a permanent injunction ordering Klopp to cease display or disclosure of Doe's intimate visual depictions, to destroy and delete all copies of Doe's intimate visual depictions that are in his possession, and to affirmatively notify Doe of any and all other individuals or entities—to include websites, applications, or social media platforms—that may have received or be in possession of copies of Doe's intimate visual depictions so that Doe may seek their destruction and deletion from these individuals and/or entities.

**COUNT III:**
**Intentional Infliction of Emotional Distress (IIED)**
**(Nebraska Common Law Cause of Action)**

66. Plaintiff incorporates the foregoing paragraphs, as if fully set forth herein.

67. Nebraska law permits plaintiffs to bring causes of action based upon the common law tort of intentional infliction of emotional distress. *See e.g.*, *Iwanski v. Gomes*, 259 Neb. 632, 637 (2000).

68. The Nebraska Supreme Court has "delineated three elements for a cause of action based on the tort of intentional infliction of emotional distress: (1) that there has been intentional or reckless conduct; (2) that the conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community; and (3) that the conduct caused emotional distress so severe that no reasonable person should be expected to endure it." *Nichols v. Busse*, 243 Neb. 811, 817 (1993) (cleaned up); *accord Brandon ex rel. Est. of Brandon v. Cnty. of Richardson*, 261 Neb. 636, 656 (2001).

69. Klopp's actions in taking and disclosing Doe's intimate visual depictions that he obtained without her knowledge or consent were intentional or, at the very least, reckless.

70. Klopp's action in this regard caused willful and malicious injury to Doe within the meaning of 11 U.S.C. § 523(a)(6).

71. These intimate visual depictions consisted of electronic media that showed, among other things: (1) Doe's uncovered genitals, pubic area, anus, and/or post-pubescent female nipple, and (2) Doe engaging in "sexually explicit conduct," as that term is defined by 15 U.S.C. § 6851(a)(6), as well as "sexual conduct" as that term is understood within the meaning of Neb. Rev. Stat. § 25–3502.

72. At the time Klopp intentionally took and disclosed them, Doe's intimate visual depictions were not a matter of public concern or public interest.

73. At the time Klopp intentionally took and caused said disclosure of these intimate visual depictions, he was not acting in good-faith or with any legally authorized basis for doing so.

74. Klopp's conduct in taking and subsequently causing disclosure of Doe's intimate visual depictions was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community.

75. The State of Nebraska recognizes the atrocious and utterly intolerable nature of Klopp's actions as evidenced by the fact that it criminally prosecuted him in connection with such acts.

76. The outrageousness of this conduct is exacerbated by the fact that Klopp obtained these intimate visual depictions of Doe without her knowledge and consent while she was at home where her reasonable expectations of privacy would have been at their zenith, especially with respect to those intimate visual depictions showing her in places such as the bathroom and the marital bedroom.

77. The outrageousness of this conduct is further exacerbated by the nature of the relationship between Klopp and Doe given that they were married and living together at the time of the acts complained of herein.

78. Klopp's conduct in taking and causing disclosure of Doe's intimate visual depictions caused emotional distress to Doe that is so severe no reasonable person should be expected to endure it.

79. Wherefore, Doe respectfully requests that this Honorable Court award her damages to the extent authorized by Nebraska law including, but not necessarily limited to, compensatory damages for the mental suffering,

emotional distress, and related expenses attendant thereto, that Doe has suffered and/or will continue to suffer as the result of Klopp's conduct set forth above.

## JURY DEMAND AND PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this matter be tried to a jury in Omaha, Nebraska, that the Court find that Defendant Alex Klopp is liable to Plaintiff Jane Doe under each of the Counts she has brought in this Complaint and for the relief sought therein, and that this Court further enter judgment in favor of Plaintiff Jane Doe and against Defendant Alex Klopp in the following amounts:

A. Compensatory damages, to include damages for the physical harm, economic harm, mental suffering, and emotional distress that Plaintiff Jane Doe has incurred and will continue to incur;

B. Liquidated damages in the amount prescribed for by federal law;

C. Presumed damages in the amount prescribed for by Nebraska state law;

D. Punitive damages to punish and deter the reprehensible conduct alleged in the Complaint, to the extent authorized by federal law;

E. General damages as available under Nebraska law;

F. Nominal damages;

G. Pre-judgment interest and post-judgment interest to the extent authorized by law;

H. Reasonable attorney's fees;

I. The costs of this action;

J. Additional damages as are proven at trial;

K. Equitable relief, to include in the form of a permanent injunction, ordering Defendant Alex Klopp to cease display or disclosure of Doe's intimate visual depictions, to destroy and delete all copies of Doe's intimate visual depictions that are in his possession, and to affirmatively notify Doe of any and all other individuals or entities—to include websites, applications, or social media platforms—that may have received or be in possession of copies of Doe's intimate visual

depictions so that Doe may seek their destruction and deletion from these individuals and/or entities; and

L. Such other relief as this Court deems equitable and proper.

**DATED this 31st day of August 2026.**

JANE DOE,

By: *_/s/ Ryan S. Crnkovich_*

Ryan S. Crnkovich., NE Bar No. #25741
Dornan, Breitkreutz, Dahlquist, & Klein PC, LLO
1403 Farnam Street, Suite 232
Omaha, NE 68102
(402) 884-7044
(402) 884-7045 fax
ryan@dltlawyers.com
Attorney for Plaintiff